34 C.C.P.A.(Patents)

## Application of HERTRICH.
### Patent Appeal No. 5302.

Court of Customs and Patent Appeals.
April 22, 1947.

Hammond & Littell, of New York City (Albert C. Johnston, of New York City, of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (J. L. Brewrink, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

Appellant has here appealed from the decision of the Board of Appeals of the United States Patent Office affirming the Primary Examiner's rejection of certain claims in his application for a patent on driving system for centrifugals or the like.

The invention involved in this appeal is described in great detail by the examiner and in appellant's brief. It is described by the Board of Appeals in its decision as follows:

"The rejected claims relate to a mechanism for driving a machine, such for example as a centrifuge for separating liquid materials from sugar and they are directed more particularly to means for controlling a fluid coupling between the driving motor and the driven element of the centrifuge. Applicant points out that a control of the character described is necessary because of the conditions of operation of a sugar centrifuge, which is quickly accelerated from rest to high speed, tending to cause what may be termed undesirable reactions in the driving motor."

The Primary Examiner allowed claims 9, 10, 13, 17, and 18 and rejected claims 1 to 8, inclusive, 12, 14, 15, 16 and 20. Upon appeal to the Board of Appeals the examiner's rejection of said claims was affirmed.

In his brief appellant has moved to dismiss the appeal as to claim 12, which motion will be granted.

Claims 1, 3, 8, 15 and 20 were stated by the board to have been selected as typical and they follow:

"1. In combination with a heavy-duty machine comprising a driven shaft and rotary driving means including a motor and

a hydraulic coupling, means connected with said motor and shiftable in one direction by the torque reaction of said motor, yieldable means to exert continuously a predetermined force tending to move said shiftable means in another direction in opposition so such torque reaction, and means operated by said shiftable means for varying and controlling the volume of fluid in said coupling."

"3. In combination, a heavy-duty machine having a vertical rotary driven shaft, a motor having a vertical rotary driving shaft, a hydraulic coupling for transmitting power between said shafts, means for varying the degree of filling of the coupling, yieldable means tending to move said means to a position to fill the coupling and means connected to a part of the motor for movement in direct response to the torque reaction of the motor to counteract said yieldable means and reduce the filling of the coupling."

"8. In combination with a machine having a rotary driving motor, a rotary driven shaft and a hydraulic coupling to transmit power from the motor to the driven shaft, means mounting the motor frame for limited turning movement in reaction to the motor torque, an oil supply line leading to said coupling, a control valve in said line to vary the oil inflow to the coupling, means in the coupling for continuously discharging oil therefrom, means operated by such turning movement of said motor for moving said control valve toward a closed position, fluid-pressure-responsive means for opposing such turning movement of the frame and urging said control valve toward an open position, and means for applying a predetermined fluid pressure to said fluid-pressure-responsive means."

"15. In combination, a plurality of machines each having a rotary driving means, a rotary driven shaft, and a hydraulic coupling to transmit torque between the driving means and driven shaft, movable means for controlling the quantity of liquid in each coupling, means shiftable by the torque reaction of the driving means of each machine for moving the corresponding movable means so as to reduce the torque of the corresponding coupling, and means common to all of the machines for applying a predetermined force in opposition to the action of each of the said shiftable means."

"20. In a heavy-duty machine, a vertical rotary driven shaft, a motor support thereabove, an electric driving motor, a hydraulic coupling to transmit power from the motor shaft to said driven shaft, means mounting the stator-carrying frame of said motor in vertical position for limited turning movement on said support, said means including a circular series of bearings between the motor frame and the support, an oil supply line leading into said coupling, a control valve to open and close said supply line, means to exert a predetermined yieldable force on said valve tending to open the same, and means including a radial arm secured to said motor frame and connected with said valve to exert the torque reaction of said motor in opposition to said force-exerting means."

The Primary Examiner relied upon the following references:

Field, 552,521, January 7, 1896.
Willey, 1,282,344, October 22, 1918.
Fynn, 1,387,149, August 9, 1921.
Howse, 1,663,513, March 20, 1928.
Sinclair, 1,855,032, April 19, 1932.
Ringman, 2,287,709, June 23, 1942.
Camerota et al., 2,300,338, October 27, 1942.

The examiner rejected claims 1 to 7, inclusive, and 20 on Sinclair in view of Field or Fynn and Willey. In explaining this rejection he stated:

"These claims differ from Sinclair in requiring either directly, or by inference from language used, that the inlet valve of the coupling be moved towards closed position by the torque reaction on the driving motor itself. Sinclair controls his valve by a force proportional to motor torque through the medium of his torque motor 6. Since Field and Fynn show that it is old to use the torque reaction on the motor frame as a control force by mounting the frame for limited rotation and connecting it to the member to be controlled, it is considered within the skill of a person experienced in the art to replace Sinclair's torque motor 6 with a mounting permitting limited turning of his motor frame 1, the frame itself

being then connected to turn valve 8 to closed petition. Such a change is fairly within the teaching of Fynn and Field, and produces no new or unexpected result. Field also mounts his frame on anti-friction rollers, as required by claim 20. Willey is used to show that the motor may be arranged vertically, as some claims require."

Claim 8 was rejected on Sinclair in view of Fynn or Field and Ringman, Howse or Camerota et al. The examiner pointed out that this claim differs from Sinclair in requiring operation of the inlet valve by movement of the motor frame opposed by a regulated fluid pressure but that movement of the motor frame as a control medium is taught by Fynn or Field, and that use of fluid pressure is taught by Howse, Ringman or Camerota et al.

Claims 14, 15 and 16 were rejected on Sinclair in view of Fynn or Field and Howse or Ringman. These claims are drawn to a combination of a plurality of machines having separate drive means and control means, with common means applying a predetermined force to the control means to resist the individual torques of the drive means. The examiner stated that this group of claims merely requires a duplication of the unit structure of claim 8 and must also be held to be unpatentable.

The patent to Sinclair, the main reference, relates to load equalizing machinery. In a system designed to substantially uniformly load a motor in driving a flywheel and variable load, Sinclair utilizes a hydraulic coupling which discharges fluid that is replaced through a pipe controlled by a valve. The valve is regulated to open and closed positions by a spring and by a torque motor respectively. This torque motor, through electrical connections responsive to the electrical power used by the driving motor, exercises control over the supply of liquid to the coupling and thus accomplishes the function of maintaining a constant load on the said driving motor as determined by the spring, which is adjustable.

Since the characteristics of the other reference patents have been properly explained in the decisions of the Patent Office tribunals it seems unnecessary to discuss them here in detail.

The Board of Appeals in its decision approved the examiner's rejection on the grounds above set forth. In addition, the board stated that it did not find any invention in the vertical arrangement of the assembly as called for by Claim 3, for which feature the patent to Willey was cited by the Primary Examiner. The board, upon appellant's petition for reconsideration of its decision, adhered to the views therein expressed.

It is our view of the case that if appellant, who has concededly made an invention, is entitled to some of the claims involved in this appeal it is clearly on account of the fact that he has combined with the Sinclair reference certain elements disclosed in the other reference patents.

It is easy to say, as the Patent Office has said, and frequently properly has said, that combinations of old art disclosures do not amount to invention, but it has also been so frequently held as to require no citation of authorities that some combinations of old art elements, depending upon their character and their possible modifications, may constitute a structure which would bring the combinations within the purview of patentable novelty and usefulness. This we conclude is the situation here.

Appellant filed his affidavit, considered by both tribunals below, which points out the nature and degree of the improvements made in such an understandable way that it must be conceded that appellant has advanced the art of regulating and operating heavy-duty machinery, such as is here specially referred to for the manipulation of sugar stocks. This advancement would seem to us to clearly bring what appellant has done into the realm of invention.

Of course, in cases such as this the question of the existence of invention is usually a matter of opinion and the opinion of the experts of the Patent Office, who are presumably familiar with what the applicant has done and what the prior art is, is usually persuasive of correctness.

However, in the instant case, appellant, by the affidavit which we, on account of its length, will not quote here, has pointed out that in contra-distinction to the prior art he has produced a system for the operation of motor driven centrifugal machines where their operation is held to a fixed and uniform rate and standard of speed and requirement of power, and where the danger of overloading the driving motor has been eliminated in such a way that is not anticipated by the prior art, and in a relatively inexpensive manner. Appellant urges that his system enables more machines to be operated from a limited power source without the necessity of expanding its capacity and that his device makes possible a number of desirable results which heretofore could not be obtained by the employment of any prior art method or machine. Other beneficial results are clearly explained in the affidavit but we think it unnecessary to unduly lengthen this opinion by referring to them.

It is our conclusion that claims 1, 2, 4 to 8, inclusive, and 20 define patentable invention and that the board was in error in approving the examiner's rejection of these claims.

The board pointed out that claim 3 "additionally recites the vertical arrangement of the assembly" and that this element of the claim did not involve invention. Claim 20 also recites a vertical arrangement, but this claim has other important elements which are relied upon by the appellant to render it patentable. We agree with the board that claim 3 was properly rejected for the reason stated and we hold that claim 20 should have been allowed.

The board stated, in agreement with the examiner's holding, that claims 14, 15 and 16 were "drawn to a combination of a plurality of machines each of which is constructed as shown in Figure 1 or as shown in the Sinclair patent as modified by the other patents as indicated above." It was held by the Patent Office tribunals that there was no invention in this obvious duplication of the structure of claim 8. Notwithstanding the fact that appellant's invention has merit in saving power and

probably in other respects where there is a combination of more than one of such machines, we think this fact alone does not justify the reversal of the board's decision as to these claims.

It therefore follows, in view of what we have heretofore said, that all of the appealed claims except 3, 12, 14, 15 and 16 should have been allowed. It is held that the decision of the board affirming that of the examiner in rejecting claims 3, 14, 15 and 16 is affirmed, and as to all the other appealed claims except claim 12 the decision of the board is reversed. The appeal as to claim 12, in accordance with appellant's motion, is dismissed.